UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE SCHOFIELD

MEHDI GABAYZADEH,

Plaintiff,

vs.

GLOBAL EQUIPMENT &
MACHINERY SALES, INC.,
GLOBAL EQUIPMENT
INTERNATIONAL, LLC,
RON FELDMAN,
MICHAEL DOWNING,
AMERICAN PAPER
RECYCLING CORPORATION,
KENNETH GOLDEN,

Defendants.

18 CV 3851

Index No. _____

PLAINTIFF'S VERIFIED COMPLAINT

DEMAND FOR JURY TRIAL

Plaintiff **MEHDI GABAYZADEH** brings this action against Defendants and hereby alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction and venue over this action and these Defendants, pursuant to 28 U.S.C. § 1332, as follows.

2. There exists complete diversity of citizenship between Plaintiff and all Defendants in this action as herein stated.

## THE PARTIES

3. Plaintiff herein, has at all times before, during and at present been domiciled as a citizen and resident of the State of New York, with his principal place of business domiciled and located at 100 Park Avenue, Suite 1600, New York, N.Y. 10017

4.    Defendant **GLOBAL EQUIPMENT & MACHINERY SALES, INC.**, is a corporate Defendant who is incorporated under the laws of the State of Pennsylvania and has and/or had its corporate headquarters, principal place of business and corporate domicile located at 345 Dresher Road, Horsham, PA 19044, but who does and/or did ongoing business in the State of New York as well as in the Southern District of New York.

5.    Defendant **GLOBAL EQUIPMENT INTERNATIONAL, LLC** is a corporate Defendant who is incorporated under the laws of the State of Pennsylvania and has its corporate headquarters, principal place of business and corporate domicile located at County Line Road #179, Chalfont, PA 18914, but who does ongoing business in the State of New York as well as in the Southern District of New York.

6.    Defendant **RON FELDMAN** is an individual Defendant who is a resident and citizen of the State of Pennsylvania and who is the executive in charge of pulp and paper converting machinery at both Defendant **GLOBAL EQUIPMENT & MACHINERY SALES, INC.** and Defendant **GLOBAL EQUIPMENT INTERNATIONAL, LLC,** with his current principal place of business domiciled and located at County Line Road #179, Chalfont, PA 18914, but who does ongoing business in the State of New York as well as in the Southern District of New York.

7.    Defendant **MICHAEL DOWNING** is an individual Defendant who is a resident and citizen of the State of Pennsylvania and who was the President and C.E.O. at Defendant **GLOBAL EQUIPMENT & MACHINERY SALES, INC**. and who had his principal place of business domiciled and located at 345 Dresher Road, Horsham, PA 19044 at the time this action accrued and who at that time engaged in ongoing business in the State of New York as well as in the Southern District of New York, but who is now retired and resides at 107 Chambers Street, Morrisville, PA 19067.

8.   Defendant **AMERICAN PAPER RECYCLING CORPORATION** is a corporate Defendant who is incorporated under the laws of the State of Massachusetts and has its corporate headquarters, principal place of business and corporate domicile located at 87 Central Street, Building 1, Mansfield, MA 02048 but who does ongoing business in the State of New York as well as in the Southern District of New York.

9.   Defendant **KENNETH GOLDEN** is an individual Defendant who is a resident and citizen of the State of Massachusetts, who is the President and C.E.O. of Defendant **AMERICAN PAPER RECYCLING CORPORATION,** with his principal place of business domiciled and located at 87 Central Street, Building 1, Mansfield, MA 02048 but who does ongoing business in the State of New York as well as in the Southern District of New York.

## STATEMENT OF CLAIM  :  FACTS OF THE CASE – PART I

10.   Plaintiff **MEHDI GABAYZADEH** (Plaintiff), at the time this cause of action accrued, was a businessman who owned many different corporations and LLC companies, all of which were in the business of manufacturing various types of tissue paper around the United States and all of which were headquartered, domiciled and registered with the New York State Department of State, Division of Corporations to do business in the State of New York.

11.   One of these owned entities was Super American Tissue Inc (SATI), which was headquartered and domiciled in New York, with a business address at the time of 135 Engineers Road, Hauppage, N.Y. 11766.

12.   Defendant **GLOBAL EQUIPMENT & MACHINERY SALES, INC.,** (GEMS) is a corporate Defendant who, upon information and belief was incorporated under the laws of the State of Pennsylvania and who, upon information and belief, had at the time

this cause of action accrued, its corporate headquarters, principal place of business and corporate domicile located at 123 Keystone Drive, Montgomeryville, PA 18936, but who, upon information and belief, did ongoing business on a nationwide basis throughout the United States as well as in the State of New York and Southern District of New York.

13.    Upon information and belief, GEMS is a company that specializes in brokering the purchase and sale of various types of pulp and paper manufacturing and/or converting machinery, equipment and material business on a nationwide basis throughout the United States as well as in the State of New York and Southern District of New York.

14.    On or about the date of March 29, 2001, Plaintiff, through his company SATI, arranged to purchase copy paper machine from Weyerhaeuser, located in Seattle, WA through the brokerage efforts of GEMS.

15.    Plaintiff issued a Purchase Order through GEMS for this equipment in the amount of Two Hundred Forty Thousand ($240,000 USD) Dollars on the above stated date.

16.    On or about the date of April 27, 2001, Plaintiff arranged for payment of the $240K to be made to GEMS.

17.    Additionally, once payment had been made, Plaintiff worked with Defendants GEMS and Feldman directly to coordinate with Weyerhaeuser's warehouse in Seattle where this equipment was located to load and move the paid for equipment from its then Seattle location to a mill facility owned by American Paper Mills of Michigan, LLC (APM) located in Parchment Michigan at a cost of approximately One Hundred Thousand ($100,000 USD) Dollars.

18.    On or about the date of March 3, 2003, Plaintiff contacted Defendant **RON FELDMAN** (Feldman) of GEMS to arrange for the movement and storage of this equipment from the APM mill facility in Parchment, Michigan to a GEMS warehouse facility at its corporate location of 123 Keystone Drive, Montgomeryville, PA 18936.

19.    This move was necessary due to loss of warehouse space.

20.    Before the equipment could be loaded and moved, however, the City of Parchment required Plaintiff to provide proof of ownership to the City and Plaintiff did provide such proof in October-November of 2003.

21.    Upon City of Parchment approvals for the equipment relocation out of the Parchment mill facility, on or about the date of November 26, 2003, Plaintiff spent approximately Seventeen Thousand Five Hundred ($17,500 USD) Dollars to in fact load and move his equipment from the APM mill facility in Parchment, Michigan to a GEMS warehouse facility at its corporate location of 123 Keystone Drive, Montgomeryville, PA 18936.

22.    Upon the relocation of the above stated equipment to the GEMS warehouse in Pennsylvania, Plaintiff commenced to pay a monthly rental to GEMS for the storage of the equipment and did so on a continuous basis from November of 2003 through March of 2005.

23.    The total amount paid by Plaintiff to GEMS for the storage rental fees through the above stated period is approximately Thirty Four Thousand Eight Hundred Seventy ($34,870 USD) Dollars.

24.    The rental payments stopped in March of 2005 due to the fact that Plaintiff had been on trial in federal court for white collar criminal allegations and on the date of April 13, 2005, Plaintiff was incarcerated while awaiting sentence for federal court criminal convictions thereto.

25.    In September of 2005, Defendant Feldman visited Plaintiff in the Queens Detention Center to discuss the equipment currently being stored by GEMS for Plaintiff.

26.    The Parties agreed that Defendants Feldman and GEMS would arrange for and broker a sale of the equipment on behalf of Plaintiff.

27.    The Parties further agreed that it would be impossible for Plaintiff to work with Defendant Feldman or to execute a contract while in the detention center, so Defendant Feldman agreed to work with and to provide a contract for the sale of the equipment to Plaintiff's son John GABAYZADEH (John) at such time as a sale was arranged.

28.     Additionally, Defendant Feldman expressly told Plaintiff not to contact him while he was in prison and that he would arrange everything with John.

29.     Plaintiff was eventually sent to a federal prison facility and served his sentence until September of 2016.

30.     During the course of Plaintiff's incarceration, Defendants GEMS, Feldman and Defendant **MICHAEL DOWNING** (Downing) maintained an ongoing and working relationship with John, as more fully detailed in Part II of this action.

31.     Additionally, and during the course of Plaintiff's incarceration, Defendants GEMS, Feldman and Downing never presented a contract for the sale of the stored equipment to John as had been arranged by and between Plaintiff and Feldman after this September, 2005 visit and meeting at the Queens Detention Center by and between Plaintiff and Feldman.

32.     The above stated facts are true, notwithstanding that Defendants GEMS, Feldman and Downing maintained an ongoing and working relationship with John, as more fully detailed in Part II of this action, throughout the course of Plaintiff's incarceration.

33.     Plaintiff was released from incarceration in September of 2016.

34.     Plaintiff then contacted and finally got ahold of and spoke with Defendant Feldman at GEMS in October of 2016 and asked about the stored equipment.  Feldman told Plaintiff that the equipment had been sold and when Plaintiff asked about the contract of sale for John and the proceeds of the equipment's sale, Feldman hung up on Plaintiff.

35.     Despite numerous attempts by Plaintiff to speak with Feldman and/or to receive the contract of sale and proceeds from the sale of his equipment, said Defendants Feldman, GEMS and Downing have refused to communicate with Plaintiff or to provide an accounting of the sale of this equipment.

36.     The value of this equipment is approximately Five Million ($5,000,000 USD) Dollars.

37.     Defendants Feldman, GEMS and Downing committed intentional fraud by selling equipment they did not own, did not buy or pay for and did not disclose their fraudulent sale of Plaintiff's equipment to either Plaintiff or to his son John, but instead intentionally and fraudulently sold Plaintiff's equipment and kept the sale proceeds for themselves.

38.     Plaintiff discovered this intentional fraud as committed by Defendants Feldman, GEMS and Downing in October of 2016.

39.     Upon information and belief, Defendant Downing retired as Owner, President and C.E.O. of GEMS at some time after this occurred in 2016.

40.     Upon information and belief and at some unknown time after Down's retirement, GEMS changed its corporate name to GLOBAL EQUIPMENT INTERNATIONAL, LLC (GEI).

41.     Additionally, and upon information and belief, GEMS/GEI moved its corporate address from 123 Keystone Drive, Montgomeryville, PA 18936 to 345 Dresher Road, Horsham, PA 19044 and then moved it again to its current address of County Line Road #179, Chalfont, PA 18914.

42.     As stated, the above-named Defendants committed intentional fraud against Plaintiff by secretly selling his equipment illegally and fraudulently with intent to defraud Plaintiff from his rightful proceeds of the sale.

43.     Further, the above-named Defendants were intentionally and unjustly enriched by their committed acts of intentional fraud against Plaintiff.

44.     Plaintiff, upon learning of this intentional and active fraud committed against him in September of 2016 by Defendants GEMS, Feldman and Downing, then made numerous attempts to speak with Defendant Feldman about the hidden and intentionally fraudulent sale of Plaintiff's equipment, but Feldman has refused to speak with him at all about it.

45.   Further, Plaintiff, upon learning of this intentional and active fraud committed against him in September of 2016 by the above-named Defendants, then made numerous attempts to get an accounting of the sale transaction from Feldman, but Defendant Feldman has refused to speak with him at all about it or to provide to Plaintiff his requested accounting.

46.   Defendant Feldman intentionally and fraudulently induced Plaintiff to let Feldman, GEMS and Downing arrange the sale of Plaintiff's equipment and Plaintiff reasonably trusted these Defendants and relied on them to protect his interests by working with his son John and to provide a sale contract and the sale proceeds to John at the time a sale was arranged.

47.   As a result thereof, and due to the above named Defendants' fraudulent inducement, misrepresentations and active hiding of their fraudulent conduct, Defendants received massive monetary benefits unjustly and the value of Defendants' businesses were greatly enhanced by the hidden and intentionally fraudulent sale of Plaintiff's equipment so that Defendants were thereby unjustly enriched at Plaintiff's expense.

48.   The facts are that Plaintiff has no other recourse, but to file this action due to the economic harm and damages that Defendants Feldman, GEMS and Downing have caused him, due to their intentional and active fraud as the facts as above stated have shown.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT GLOBAL EQUIPMENT & MACHINERY SALES, INC.

49.   The above stated paragraphs are hereby incorporated herein and made a part hereof.

50.   That everything stated in the above paragraphs are true and accurate to the best of my knowledge, except as to those matters stated "upon information and belief" and as to those matters so stated, I believe them to be true.

51.   Defendant GEMS, jointly and severally with Defendants Feldman and Downing committed intentional fraud by selling equipment they did not own, did not buy and/or pay for and intentionally did not disclose that they fraudulently sold.

pg. 8

52.    Defendant GEMS, jointly and severally with Defendants Feldman and Downing committed intentional fraud by their failure to disclose their fraudulent sale of Plaintiff's equipment to either Plaintiff or to his son John, but instead intentionally and fraudulently hid the sale of Plaintiff's equipment with the fraudulent intent to keep the sale proceeds for themselves.

53.    As a result thereof and due to the above named Defendants' fraudulent inducement, misrepresentations and active hiding of their fraudulent conduct, Defendant GEMS, jointly and severally with Defendants Feldman and Downing, received massive monetary benefits unjustly and the value of Defendants' businesses were greatly enhanced by the hidden and intentionally fraudulent sale of Plaintiff's equipment so that Defendants were thereby unjustly enriched by their committed acts of intentional fraud against Plaintiff, at Plaintiff's expense.

54.    That Plaintiff has no other recourse, but to file this action due to the economic harm and damages that Defendant GEMS, jointly and severally with Defendants Feldman and Downing have caused him, due to their intentional and active fraud as above stated.

## PRAYER FOR RELIEF:

Plaintiff hereby requests that this Court grant him Relief and Judgment as follows:

A.    For an Order which directs Defendant GLOBAL EQUIPMENT & MACHINERY SALES, INC., jointly and/or severally with the other Defendants, to pay back to Plaintiff actual monetary damages as per the initial wired sum of $240,000.

B.    For an Order which directs Defendant GLOBAL EQUIPMENT & MACHINERY SALES, INC., jointly and/or severally with the other Defendants, to pay back to Plaintiff statutory interest on the initial wired sum of $240,000 at the statutory rate in New York State of Nine (9%) interest.  This would be calculated as follows:

- Wire total sent as of April 27, 2001
- From April 27, 2001 through April 27, 2018 is a total of 17 years
- Annual 9% interest on the sum of $240,000 comes to $21,600 per annum

pg. 9

- $21,600 per annum x 17 years comes to $367,200
- $21,600 per annum divided by 365 comes to a per diem of $59.17
- From April 27, 2018 through to judgment would be $59.17perdiem, plus the above

C.     For an Order, therefore that directs Defendant GLOBAL EQUIPMENT & MACHINERY SALES, INC., jointly and/or severally with the other Defendants, to pay back to Plaintiff actual monetary damages as per the dismantling, packing, loading and transporting of the above stated machines incurred by Plaintiff in the amounts of $100,000 plus $17,500, for a total amount of monetary damages in the sum of $117,500.

D.     For an Order which directs Defendant GLOBAL EQUIPMENT & MACHINERY SALES, INC., jointly and/or severally with the other Defendants, to pay back to Plaintiff statutory interest on the above stated monetary damages sum of $117,500 at the statutory rate in New York State of Nine (9%) interest.  This would be calculated as follows:

- Interest start date of April 27, 2001
- From April 27, 2001 through April 27, 2018 is a total of 17 years
- Annual 9% interest on the sum of $117,500 comes to $10,575 per annum
- $10.575 per annum x 17 years comes to $179,775
- $10,775 per annum divided by 365 comes to a per diem of $48.69
- From April 27, 2018 through to judgment would be $48.69perdiem, plus the above

E.     For an Order which directs Defendant GLOBAL EQUIPMENT & MACHINERY SALES, INC., jointly and/or severally with the other Defendants, to pay back to Plaintiff actual monetary damages as per rent paid to store equipment that had been fraudulently and illegally sold by said Defendants, with said total rent paid by Plaintiff in the sum of $34,700.

F.     For an Order which directs Defendant GLOBAL EQUIPMENT & MACHINERY SALES, INC., jointly and/or severally with the other Defendants, to pay back to Plaintiff statutory interest on the paid total rental sum of $34,700 at the statutory rate in New York State of Nine (9%) interest.  This would be calculated as follows:

- First rental payment sent on November 1, 2003
- From November 1, 2003 through April 27, 2018 is a total of 14 years, 178 Days.
- Annual 9% interest on the sum of $34,700 comes to $3,123 per annum
- $3,123 per annum x 14 years comes to $43,722
- $3,123 per annum divided by 365 comes to a per diem of $8.55
- From November 1, 2017 through April 27, 2018 is 178 Days
- $8.55 per diem x 178 Days comes to $1,522.99
- The total sum owed by Plaintiff for rent payback plus interest comes to $79,944.99
- From April 27, 2018 through to judgment would be $8.55perdiem, plus the above

G.      For an Order which directs Defendant GLOBAL EQUIPMENT &
MACHINERY SALES, INC., jointly and/or severally with the other Defendants, to pay back
to Plaintiff monetary damages for the value of the fraudulently and illegally sold equipment
owned by Plaintiff in the sum of $5,000,000.

H.      For an Order which directs Defendant GLOBAL EQUIPMENT &
MACHINERY SALES, INC., jointly and/or severally with the other Defendants, to pay back
to Plaintiff statutory interest on the value of the fraudulently and illegally sold equipment
owned by Plaintiff at the statutory rate in New York State of Nine (9%) interest.  This would
be calculated as follows:

- The actual value of the fraudulently sold equipment as of April 27, 2018
- From April 27, 2001 through April 27, 2018 is a total of 17 years
- Annual 9% interest on the sum of $5,000,000 comes to $450,000 per annum
- $450,000 per annum x 17 years comes to $7,650,000
- $450,000 per annum divided by 365 comes to a per diem of $1,232.87
- From April 27, 2018 through judgment would be $1,232.87per diem, plus the above

I.      For an Order, therefore that directs Defendant GLOBAL EQUIPMENT &
MACHINERY SALES, INC., jointly and/or severally with the other Defendants, to pay to
Plaintiff punitive damages in the form of Triple monetary damages, due to the intentional and
active fraud of Defendant GLOBAL EQUIPMENT & MACHINERY SALES, INC., jointly

and severally with Defendants Feldman and Downing in the intentionally fraudulent sale of Plaintiff's equipment, with triple damages to be awarded in the total sum of $13,364,419.99 x 3 = $40,903,259.97 plus $1.349.28 per diem x 3 = $4,047.84 per diem until paid in full to Plaintiff, subsequent to date of Judgment.

J.    Which shall duly enter a Judgment against Defendant GLOBAL EQUIPMENT & MACHINERY SALES, INC., jointly and/or severally with the other Defendants in this action and in favor of Plaintiff for the above stated amount and as allowed by law.

K.    Which shall award to Plaintiff attorneys fees and all costs and fees of this action.

L.    Such other and further relief as the Court deems necessary and prudent and to which Plaintiff may be entitled.

AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT RON FELDMAN

55.    The above stated paragraphs are hereby incorporated herein and made a part hereof.

56.    That everything stated in the above paragraphs are true and accurate to the best of my knowledge, except as to those matters stated "upon information and belief" and as to those matters so stated, I believe them to be true.

57.    Defendants Feldman, jointly and severally with Defendants GEMS and Downing committed intentional fraud by selling equipment they did not own, did not buy and/or pay for and intentionally did not disclose that they fraudulently sold.

58.    Defendants Feldman, jointly and severally with Defendants GEMS and Downing committed intentional fraud by their failure to disclose their fraudulent sale of Plaintiff's equipment to either Plaintiff or to his son John, but instead intentionally and fraudulently hid the sale of Plaintiff's equipment with the fraudulent intent to keep the sale proceeds for themselves.

59.    As a result thereof and due to the above named Defendants' fraudulent inducement, misrepresentations and active hiding of their fraudulent conduct, Defendant Feldman, jointly and severally with Defendants GEMS and Downing, received massive monetary benefits unjustly and the value of Defendants' businesses were greatly enhanced by

pg. 12